United States District Court
Southern District of Texas
**ENTERED**
June 20, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:24-cv-544** |
| | § | |
| **UMANA FAMILY, INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Plaintiff Joe Hand Promotions, Inc.'s ("JHP") Motion for Final Summary Judgment and Supporting Brief and Motion in Limine. (ECF Nos. 17, 19).[1] Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** JHP's Motion for Final Summary Judgment and Supporting Brief (ECF No. 17) be **GRANTED** and JHP's Motion in Limine (ECF No. 19) be **DENIED AS MOOT**.

## I.    Background

On February 14, 2024, JHP filed suit against Defendants Umana Family, Inc., d/b/a Taqueria Don Taco and d/b/a Don Taco Taqueria, Hermes

---

[1] On February 27, 2025, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 21).

Salome Umana-Molina, a/k/a Hermes Molina ("Molina"), and Martha P. Limon, a/k/a Marta Limon ("Limon") (collectively, "Defendants"), alleging:

> the unauthorized and illegal interception and/or receipt and exhibition of the broadcast of the *Ultimate Fighting Championship® 259: Jan Blachowicz vs. Israel Adesanya* mixed martial arts match, including all undercard bouts and commentary, telecast on March 6, 2021 (the "Program") at the establishment known as Taqueria Don Taco/Don Taco Taqueria located at 8111 Long Point Rd., Houston, Texas 77055 (the "Establishment"), a commercial business, without paying the commercial sublicense fees to Plaintiff.

(ECF No. 17 at 6). JHP sues Molina and Limon in their individual capacity as officers, directors, shareholders, and/or principals of the Establishment. (ECF No. 1 at 1). JHP alleges it "was granted the sole and exclusive license to distribute and authorize the public display of the Program to businesses such as the Establishment." (*Id.* at ¶ 8). JHP further alleges Defendants unlawfully broadcast the Program without authorization or payment to JHP. (*Id.* at ¶ 11). Accordingly, JHP asks the Court to find Defendants liable and award it damages under the Federal Communications Act ("FCA") 47 U.S.C. § 605 "for the unauthorized exhibition of the Program at the Establishment." (ECF No. 17 at 14).

## II. Legal Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56. Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a

cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

## III.  Discussion

JHP seeks summary judgment, arguing it established: (1) its violation of the FCA claim under 47 U.S.C. § 605; (2) individual liability against Molina

4

and Limon; (3) statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); (4) damages for willful acts under 47 U.S.C. § 605(e)(3)(C)(ii); and (5) attorney's fees and costs. (*See* ECF No. 17). JHP further claims it is entitled to certain essential issues being deemed admitted as a matter of law under Rule 36. (*Id.* at 9–11). Defendants did not file a response to JHP's Motion for Final Summary Judgment and Supporting Brief (ECF No. 17) or Motion in Limine (ECF No. 19). As such, JHP's "motion[s] will be taken as a representation of no opposition." S.D. TEX. LOC. R. 7.4.

### A.    Admissions Under Rule 36

JHP alleges Defendants failed to timely serve responses to its Requests for Admission. (ECF No. 17 at 10). Accordingly, JHP asserts essential issues are deemed admitted as a matter of law pursuant to Rule 36. (*Id.*).

"Rule 36 governs requests for admissions; it allows parties to serve written requests for admissions to opposing parties. A matter admitted under rule 36 'is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" *Poon-Atkins v. Sappington*, No. 21-60467, 2022 WL 102042, at *1 (5th Cir. Jan. 10, 2022) (quoting FED. R. CIV. P. 36(b)). "Rule 36 gives parties thirty days to respond to a request for admission, and the rule provides that an untimely response is deemed an admission. *Id.* (citing FED. R. CIV. P. 36(a)(3)). "A party who makes an admission, whether express or by default, is bound by that admission for summary judgment

5

purposes—not even contrary evidence can overcome an admission at the summary judgment stage." *Id.* (citing *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001)).

Here, JHP establishes it served requests for admissions on Defendants on August 22, 2024 and JHP has yet to receive a response from Defendants. (ECF No. 17 at 9; ECF No. 17-10). Accordingly, Defendants' failure to respond to JHP's requests for admissions are deemed admitted.

### B.    Violation of the FCA Under 47 U.S.C. § 605

JHP seeks summary judgment on its claim that Defendants violated the FCA under 47 U.S.C. § 605. (ECF No. 17 at 15).

47 U.S.C. § 605(a) provides:

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit

of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

"A person violates 47 U.S.C. § 605 when he intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." *Joe Hand Promotions, Inc. v. Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, No. 23-cv-419, 2024 WL 4376121, at *2 (W.D. Tex. Sept. 25, 2024) (quoting *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015) (quotations omitted)). "'The unauthorized interception of satellite or cable transmission violates . . . [§] 605.'" *Id.* (quoting *Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d at 815). "To establish liability under Section 605, a strict liability statute, Plaintiff need only prove (1) that the Event was exhibited in Defendants' establishment and (2) Plaintiff did not authorize the particular exhibition of the Event." *J&J Sports Prods., Inc. v.*

*JJRM, LLC*, No. 3:19-cv-1090, 2020 WL 7398781, at *3 (N.D. Tex. Dec. 16, 2020) (citing *Garden City Boxing Club, Inc. v. Vinson*, No. 3:03-cv-0700, 2003 WL 22077958, at *3 (N.D. Tex. Sept. 3, 2003); *Joe Hand Promotions, Inc., v. Lee*, No. 11-cv-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012)).

JHP has sufficiently shown that Defendants violated 47 U.S.C. § 605 of the FCA.  First, JHP establishes that the Program was exhibited at the Establishment on March 6, 2021 through a witness affidavit, photographs, and video.  (*See* ECF No. 17-7).  Even so, it is deemed admitted that "the Establishment was a commercial business open for business on the date and during the time of the Program."  (ECF No. 17 at 10; ECF No. 17-10 at 2).  Further, it was deemed admitted that the "Establishment did broadcast, in part or in full, the Program."  (ECF No. 17 at 10; ECF No. 17-10 at 2, 7, 12).

Second, JHP establishes Defendants were not authorized to display the Program.  The Program is only available through an agreement with and payment to JHP.  (ECF No. 17-4 at 3; ECF Nos. 17-5–17-6).  Joseph P. Hand, III ("Mr. Hand"), president of JHP, declares JHP did not receive a notification from the television provider of the Establishment "to unblock the Establishment's television account or take any steps that would enable the Establishment to legally obtain the Program via an internet stream."  (ECF No. 17-4 at 4).  Further, Mr. Hand declares "JHP did not authorize this Establishment to receive and exhibit the Program."  (*Id.*).  Even so, it is deemed

8

admitted that "Defendants did not order the Program from JHP for broadcast at the Establishment and did not pay JHP for the commercial exhibition rights to broadcast the program at the Establishment." (ECF No. 17 at 10; ECF No. 17-10 at 2, 7, 12).

Third, the affidavit of Mr. Hand establishes JHP "purchased the exclusive commercial license to distribute and authorize the public display of the pay-per-view broadcast of" the Program. (ECF No. 17-4 at 2). JHP has also provided its commercial licensing agreement to establish it was granted the sole and exclusive license to distribute the Program at commercial locations in Texas. (ECF No. 17 at 12; ECF No. 17-5). Even so, it is deemed admitted that "JHP held the exclusive commercial license to distribute and authorize the public display of the Program at the Establishment." (ECF No. 17 at 10; ECF No. 17-10 at 2, 7, 12). Accordingly, JHP has shown that Defendants "intercepted and/or received or assisted in the interception and/or receipt of the transmission of the Program by a wireless connection, and broadcast or assisted in the broadcast of the Program to the patrons at the Establishment." (ECF No. 17 at 15–16).

For the reasons herein stated, the Court recommends JHP's Motion for Final Summary Judgment and Supporting Brief be granted as to its FCA claim under 47 U.S.C. § 605 as no disputed issues of material fact exist. *See JJRM, LLC*, 2020 WL 7398781, at *3–4.

9

## C.    Individual Liability

JHP argues Molina and Limon are individually liable for the violation of

the FCA.  (ECF No. 17 at 17–18).

Section 605 of the FCA,

> expressly prohibit[s] assisting third parties in intercepting or
> receiving unauthorized communications, and ha[s] been
> interpreted to allow [an aggrieved person] to hold [a person]
> individually [vicariously] liable if he had (1) the right and ability
> to supervise the unauthorized activities of the establishment in
> those activities and (2) an obvious and direct financial interest in
> those activities.

*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753–54 (S.D.

Tex. 2014) (quoting *Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, No. 7:13–

cv–132, 2014 WL 580767, at *2 (S.D. Tex. Feb. 13, 2014) (quotations omitted)).

Here, JHP has established Molina and Limon had the right and ability

to supervise the unauthorized activities of exhibiting the Program in the

Establishment on March 6, 2021.  JHP points to Defendants' Amended Answer

(ECF No. 10), in which Defendants admit Molina and Limon "had a right and

ability to supervise the activities of the Establishment on the date of the

Program" and "had an obvious and direct financial interest in the activities of

the Establishment on the date of the Program."  (ECF No. 1 at ¶¶ 5–6; ECF

No. 10 at ¶¶ 5–6).  As such, Molina and Limon are individually liable.

### D.     Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II)

JHP requests statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). (ECF No. 17 at 18).  JHP seeks $10,000.00 in statutory damages "[g]iven the benefits received (the revenue from sales and establishing goodwill by providing access to the Program) and the types of damages Plaintiff suffered[.]" (*Id.* at 20).

"'A party aggrieved by a violation of Section 605 may elect to receive either actual damages or statutory damages.'" *Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, 2024 WL 4376121, at *2 (quoting *Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d at 816).  "'[C]ourts have developed two approaches for determining statutory damages under this provision.'" *J & J Sports Prods., Inc. v. Rivera*, No. 14-cv-00343, 2015 WL 1137473, at *4 (W.D. Tex. Mar. 12, 2015) (quoting *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008)).  "'The first is to award damages based on the number of patrons in the establishment at the time of the violation, and the second is to award a flat sum for damages.'" *Id.* (quoting *Garcia*, 546 F. Supp. 2d at 386).  "Because it appears to be [the] most common approach in the Fifth Circuit and is susceptible to mathematical calculation, the Court awards damages based on the licensing fee." *Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, 2024 WL 4376121, at *3 (citing *Innovative Sports Mgmt., Inc. v. Trampsports, LLC*, No. 1:23-cv-01144, 2024 WL 3669862, at *3–4 (W.D. Tex. Aug. 5, 2024),

*report and recommendation adopted*, No. 1:23-cv-1144, 2024 WL 3898107 (W.D. Tex. Aug. 21, 2024)). "Courts typically use the licensing fee only as a baseline for damages." *Id.* (citing *G&G Closed Cir. Events, LLC v. 1) GCF Enters. LLC*, No. 15-cv-00111, 2015 WL 7313427, at *4 (W.D. Tex. Nov. 19, 2015)). "In deciding on an increase, courts account for the number of people in attendance, profits made from food and drink sales' . . . [and] profits from the entry fee." *Id.* (quoting *GCF Enters. LLC*, 2015 WL 7313427, at *4 (quotations omitted)). Courts have tripled the licensing fee in cases where defendants charge an entry fee and sold drinks to almost 130 patrons. *Id.* (citing *GCF Enters. LLC*, 2015 WL 7313427, at *4). On the other hand, courts have only increased the licensing fee by $100.00 where there was no entry fee, only five patrons were present, and it was unclear how many patrons bought food and drinks. *Id.* (citing *Rivera*, 2015 WL 1137473, at *5).

Here, the licensing fee would have been $866.00 because the Establishment has a thirty-person capacity. (ECF No. 17 at 19; ECF No. 17-4 at 3; ECF No. 17-6; ECF No. 17-7 at 1). JHP provided a witness affidavit who stated he took three headcounts of people in the Establishment while the Program was playing, in which he first counted fifteen people, then thirteen people, and finally fourteen people. (ECF No. 17-7 at 1). The witness also identified two servers, but it is unclear if the servers were included in the headcounts. (*Id.*). JHP does not state or show that Defendants required a

cover fee or entry fee.  Further, it is unclear how many patrons bought food and drinks.

Because there were only thirteen to fifteen people in the Establishment during the Program (without specificity of whether this number included employees), the lack of an entry fee, and the unclear amount of patrons eating and drinking, the Court is not inclined to double or triple the licensing fee. *Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, 2024 WL 4376121, at *3 ("Applied to the facts at hand, these cases counsel increasing damages past the licensing fee, but not doubling or tripling them.  There were between five and ten people at Cantina & Grill, but the affidavit submitted as evidence by Plaintiff does not specify whether this number was only patrons or also included employees. . . . The affidavit submitted by Plaintiff suggests that Defendants sold drinks, but it does not specify that the author saw that they were sold to individuals present at Cantina & Grill during the Event. . . . Patrons were also not charged an entry fee. . . . Because Cantina & Gril[l] has a seating capacity around sixty people, the licensing fee would have been $750. . . . The Court thus finds it appropriate to increase the licensing fee by $100.")

As such, the Court finds it appropriate to increase the licensing fee by $100.00, which would yield a total of $966.00 in statutory damages.  However, the statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) require a minimum

of $1,000.00; thus, the Court recommends statutory damages be set at $1,000.00.

### E.    Damages for Willful Act Under 47 U.S.C. § 605(e)(3)(C)(ii)

JHP seeks damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) "for purposes of direct or indirect commercial advantage or private financial gain." (ECF No. 17 at 21 (quotations and citation omitted)).  JHP argues "Defendants willfully acted to illegally intercept the transmission of the Program for commercial advantage, because they could not have 'innocently' accessed the broadcast of the Program." (ECF No. 17 at 21).  JHP seeks $20,000.00, double its requested statutory damages, to penalize for Defendants' willful acts.  (*Id.* at 23).

To be awarded damages for willful acts under 47 U.S.C. § 605(e)(3)(C)(ii), "a Court must find (1) willfulness and (2) some commercial advantage or gain to award enhanced damages." *Joe Hand Promotions, Inc. v. Tacos El Chaparro Inc.*, No. 5:23-cv-2, 2023 WL 7355164, at *5 (S.D. Tex. Oct. 12, 2023), *report and recommendation adopted*, No. 5:23-cv-2, 2023 WL 7336778 (S.D. Tex. Nov. 7, 2023) (citing *G&G Closed Cir. Events, LLC v. Alejandro*, No. 7:20-cv-00097, 2020 WL 5500302, at *4 (S.D. Tex. Sept. 11, 2020)).

Here, it is deemed admitted that Defendants knew the Establishment did not obtain the commercial exhibition rights to the Program, was not authorized to broadcast the Program, and knowingly and willfully broadcast the Program.  (ECF No. 17 at 10; ECF No. 17-10 at 3, 8, 12).  As such, JHP has

14

established that Defendants acted willfully. *See Rivera*, 2015 WL 1137473, at *5.

Next, JHP's evidence supports the finding that Defendants' actions were for purposes of direct or indirect commercial advantage. JHP establishes the Establishment sold drinks and/or food during the broadcast of the Program as evidenced by pictures taken by JHP's witness and Defendants' Texas Alcoholic Beverage Commission license. (*See* ECF Nos. 17-3, 17-7). Further, JHP establishes there was at least one television broadcasting the Program in the Establishment through a witness affidavit, photographs, and a video. (*See* ECF No. 17-7). Even so, these facts have been deemed admitted. (ECF No. 17 at 10; ECF No. 17-10 at 2, 7, 12). As such, JHP has provided sufficient evidence that Defendants obtained a commercial advantage. *See Rivera*, 2015 WL 1137473, at *5 (holding plaintiff established defendant's actions were for purposes of direct or indirect commercial advantage because defendant broadcast the event on multiple televisions and sold food and drinks during the event). Accordingly, Defendants willfully violated the statute for purposes of direct or indirect commercial advantage or gain.

"Although the FCA allows for additional damages in an amount not greater than $100,000 for willful violations, 47 U.S.C. § 605(e)(3) (C)(ii), courts have varied in their approaches to determining the proper amount to award in cases similar to the one at bar." *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-

cv-0889, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014). "In selecting the appropriate amount of enhanced damages to be applied for willfulness, the Court is mindful that the purpose of these damages is to discourage would-be pirates, including Defendant, from engaging in piracy in the future." *Rivera*, 2015 WL 1137473, at *6 (citing *Garcia*, 546 F. Supp. 2d at 386). "However, the Court also recognizes that the purpose of these damages is not to drive Defendant out of business." *Id.* (citing *Garcia*, 546 F. Supp. 2d at 386). In determining a willful damages award, courts have considered factors such as, "the number of televisions on which defendants broadcast the Event, the food and beverages it sold to customers, as well as the cover charge, and whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact." *152 Bronx, L.P.*, 11 F. Supp. 3d at 756 (citations omitted). "'Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts.'" *Tacos El Chaparro Inc.*, 2023 WL 7355164, at *5 (quoting *Joe Hand Promotions, Inc. v. Chios, Inc.*, No. 4:11-cv-2411, 2012 WL 3069935, at *5 (S.D. Tex. July 27, 2012), *aff'd*, 544 F. App'x 444 (5th Cir. 2013)). "An award of three to eight times the statutory damages is justified for a willful violation." *Id.* (citing *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-cv-92, 2018 WL 375391, at *2 (S.D. Tex. Jan. 11, 2018)).

16

Here, based on the facts of this case, the Court recommends awarding triple the amount of statutory damages ($1,000.00), which amounts to $3,000.00 in damages for willful acts under 47 U.S.C. § 605(e)(3)(C)(ii).

### F. Attorney's Fees and Costs

Finally, JHP requests an award of attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (ECF No. 17 at 23). JHP requests "leave to file a fee affidavit and Bill of Costs within fourteen (14) days after a judgment in this case is entered." (*Id.*). "Under the FCA, the Court is required to order the recovery of full costs, including attorneys' fees, to an aggrieved party who prevails." *Alima*, 2014 WL 1632158, at *5 (citing 47 U.S.C. § 605(e)(3)(B)(iii)). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Accordingly, the Court recommends JHP be granted leave to file a lodestar calculation of attorney's fees and costs with the appropriate affidavit(s) and documentation.

### G. JHP's Motion in Limine

JHP filed a Motion in Limine (ECF No. 19) requesting this Court "to exclude matters that are inadmissible, irrelevant, and prejudicial to the

17

material issues in this case." (*Id.* at 1).  Because the Court recommends JHP's Motion for Final Summary Judgment and Supporting Brief (ECF No. 17) be granted, the Court recommends JHP's Motion in Limine (ECF NO. 19) be denied as moot.  *See Grant v. U.S. Bank, Nat'l Ass'n*, No. 11-cv-2876, 2013 WL 12138547, at *1 (S.D. Tex. Apr. 26, 2013) ("After considering the motions, submissions, and applicable law, the Court finds that Defendants' motion for summary judgment should be granted and all motions in limine should be denied as moot.").

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** JHP's Motion for Final Summary Judgment and Supporting Brief (ECF No. 17) be **GRANTED,** that Molina and Limon be held individually liable, that JHP be awarded $1,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), that JHP be awarded $3,000.00 in willful act damages under 47 U.S.C. § 605(e)(3)(C)(ii), and that JHP's Motion in Limine (ECF No. 19) be **DENIED AS MOOT**.  If this Memorandum and Recommendation is adopted, the Court **RECOMMENDS** JHP be **GRANTED** leave to file a lodestar calculation of attorney's fees and costs with the appropriate affidavit(s) and documentation within fourteen (14) days of the adoption.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file

written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on June 20, 2025.

_____
Richard W. Bennett
United States Magistrate Judge